Battle, J.
 

 The bill is filed for the purpose of obtaining a divorce,
 
 a mensa et thoro,
 
 and also for alimony, under the 3rd section of the 39th chapter of the Eev. Stat. The defendant has put in a general demurrer, which must be overruled if there be any part of the bill upon which the plaintiff is entitled to relief. Adams’ Eq. 335; 1 Dan. Chan. Prac. 538, 540.
 
 Earp
 
 v. Earp, 1 Jones’ Eq. Rep. 239.
 

 The third section of the act referred to specifies several distinct things, the doing of either of which by a husband will entitle his wife to a partial divorce, and to alimony. If he “ shall abandon his family,
 
 or
 
 maliciously turn his wife out of doors,
 
 or
 
 by cruel and barbarous treatment endanger her. life,
 
 or
 
 offer such indignities to her person as to render her condition intolerable, or her life burdensome,” the law declares that he has so far forfeited his marital rights, that his
 
 *394
 
 wife may, if slie desires it, have a separate hed and board, and claim a separate’ maintenance out of his estate. In order to obtain this, the 5th section of the same act provides, that she must exhibit a petition or bill either in a Superior Court of Law, or a Court of Equity, in which she must set forth
 
 “
 
 particularly and specially the causes of complaint,” which, according to another section, must have existed six months prior to the filing of her petition or bill. The 8th section of the corresponding chapter of the Revised Code, dispenses with the six months prior existence of the causes of complaint, when the husband is removing, or about to remove, his effects from the State; but as the bill in this case was filed before that Code went into operation, it is governed by the provisions of the Revised Statutes.
 

 We have now to enquire whether the plaintiff has, in her bill, set forth sufficient causes of complaint to
 
 entitle
 
 her to relief under either clause of the act. She charges that her husband, upon the most frivolous and groundless pretences, accused her of a criminal intimacy with a young physician who boarded in the family, and manifested, by his language and conduct, contempt and hatred for her; that the young gentleman left their house, bu? his absence produced no favorable change in the demeanor of her husband towards her; that he declared she was no longer his wife, and refused to sleep in the same bed with her; that her friends attempted to interpose and bring about a better state of feeling and conduct on the part of her husband towards her; that he was inexorable, positively and cruelly rejecting every proposal for a reconciliation, and, on one occasion, said to her father, who was endeavoring to interpose his good offices, that
 
 “
 
 he had lead in his gun, and would have satisfaction.” She then states that, finding her life with her husband burdensome and intolerable, she had left him and gone to live with her father and friends, by whose bounty and kindness she had since been supported and maintained; that she had offered to return to her husband, but he had rejected all her advances; and that, on a recent occasion, she had gone, in company with two of
 
 *395
 
 lier friends, to Ms house, 'with some of her clothes, and put them in a room, and that he had caused them to he removed, locked the house and left home. This latter circumstance we cannot take into consideration, because it occurred less than six months before the filing of the bill. That, however, is not of much consequence, as we are satisfied that the other allegations are abundantly sufficient to bring her case within the operation of the clause which entitles her to relief for such indignities offered to her person, as to render her condition intolerable, or life burdensome. IVhat is an indignity to the person
 
 ? “
 
 Indignity” is defined by Mr. Webster to be, “ unmerited, contemptuous conduct towards another; any action towards another which manifests contempt for him ; contumely; incivility, or injury accompanied with insult.” It is manifest from this definition, that an indignity to the person may be offered without striking the body, or even touching it in a rude and offensive manner. Contumelious words, especially when accompanied with a contemptuous demeanor towards a person, may amount to an indignity which would be felt by a sensitive mind with far keener anguish than would be inflicted by a blow. And what, to a virtuous woman, can be more contumelious than a charge made by her husband of infidelity to her marriage vow ? What greater incivility or injury than his refusal to recognise her as his wife, and his rejection of her from his bed? What greater manifestation of hatred and contempt than to threaten her with deadly violence? We are satisfied that an indignity to her person may l)e offered without any unlawful interference with her body, which, indeed seems to be provided against by the clause which protects her from such “ cruel and barbarous treatment as may endanger her life.” We are satisfied further, that those allegations of the bill, upon which we have commented, fully make out the charge of offering such indignities to her person as to make her condition intolerable, or her life burdensome ; if, indeed, they do not make out another charge of maliciously turning her out of doors. Upon the latter, though,
 
 *396
 
 it is unnecessary for ns to express an opinion, as the former is sufficient to entitle her to all the relief which she seeks.
 

 The demurrer must be over-ruled, with costs, and the defendant ordered to answer; and to that end the cause must be remanded to the Court from which it was sent.
 

 PeR Curiam. Decree accordingly.